**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4708-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MATTHEW A. MENDES,

    Defendant-Appellant.

_____

Submitted October 2, 2019 – Decided October 18, 2019

Before Judges Yannotti and Hoffman.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 14-01-0007.

Joseph E. Krakora, Public Defender, attorney for appellant (Anderson David Harkov, Designated Counsel, on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Chief Appellate Attorney, of counsel; Roberta DiBiase, Supervising Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Matthew Mendes, who pled guilty in 2014 to fourth-degree stalking, appeals from the May 14, 2018 Law Division order denying his petition for post-conviction relief (PCR). We affirm.

I

The record establishes the following facts and procedural history. On October 20, 2013, D.D.,[1] an officer with the Lakewood Police Department, observed defendant standing at the end of his driveway facing his home and then walking into a nearby wooded area. The next day, D.D. reported the incident to the Manchester Police. He told the police that in June 2013, he arrested defendant for stalking an employee at a local behavioral health center, where defendant previously received treatment.

On October 26, 2013, Manchester Police responded to the area surrounding Manchester Middle School to investigate the report of a suspicious person. The officers observed defendant, who matched a recently issued Police Officer Safety Flyer, walking through a parking lot. After a brief inquiry, the officers released defendant. Moments later, D.D. flagged the officers down and told them that when he arrived home earlier, he observed defendant "standing on the sidewalk staring into his [front] glass door." D.D. further advised

_____

[1] We refer to the victim by his initials to protect his privacy.

defendant "has several mental health disorders," and expressed concern that defendant posed a threat to his family's safety. D.D. also reported that defendant was found guilty, in early October, in the case where D.D. arrested defendant.

The officers then spoke to D.D.'s neighbor, who said he saw defendant walk past D.D.'s home on three separate occasions earlier that day, and on two occasions earlier in the week. The neighbor described defendant's actions as "alarming."

Based on the information provided by D.D. and his neighbor, the police filed stalking and harassment charges against defendant, arresting him the next day. On January 7, 2014, an Ocean County Grand Jury returned an indictment charging defendant with fourth-degree stalking, in violation of N.J.S.A. 2C:12-10(b).

On February 14, 2014, defendant appeared with counsel for arraignment. At that time, the State extended a plea offer of probation, conditioned on defendant serving 180 days in the county jail, in exchange for defendant pleading guilty to fourth-degree stalking. After reviewing the plea agreement with counsel, defendant appeared in court later that afternoon. Defendant confirmed he reviewed the plea agreement with counsel and that he understood he was pleading guilty to stalking. He claimed he could read only "[a] little";

3

when asked how far he went in school, he responded, "Like fourth grade."[2] Nevertheless, defendant confirmed that his counsel helped him review the plea form by reading it to him and answering all of his questions.

While defendant contended he did not know where Officer D.D. lived, he acknowledged he walked by his house almost every day. The judge then asked defendant, "And [Officer D.D.] lived in the house [of] the sidewalk you were walking in front of?" Defendant replied, "Yeah, yeah." Defendant also acknowledged stopping at "the stop sign at Beacon Street," which he admitted is "right next to [D.D.'s] house." Defendant further acknowledged he understood the plea agreement, which included a no contact order. The judge then accepted defendant's guilty plea to one count of fourth-degree stalking.

On April 25, 2014, the same judge sentenced defendant to a two-year term of probation. He also sentenced him to 180 days in the Ocean County jail, with credit for time served, and ordered that defendant have no contact with the D.D. or his family.

On August 4, 2014, police executed a warrant for defendant's arrest for violating his probation. The next day, assigned counsel filed a notice of appeal

---

[2] At a later hearing on the PCR petition under review, defendant admitted he is a high school graduate.

A-4708-17T3

of defendant's April 25, 2014 conviction, and later obtained leave to file as within time.  On September 12, 2014, the Law Division negatively terminated defendant's probation.  On March 2, 2015, defendant filed a notice of withdrawal of his appeal and we dismissed the appeal the next day.

On December 19, 2016, defendant filed a pro se petition for PCR, alleging he "was setup . . ."  Through assigned counsel, defendant later filed an amended PCR petition, alleging his plea counsel provided ineffective assistance of counsel because he "failed to investigate [his] defense" and recommended he plead guilty "when there was no factual basis for the guilty plea."  He also alleged his appellate counsel provided ineffective assistance when he failed "to raise the issue" that his "factual basis was insufficient to support the fourth-degree stalking conviction."

On August 22, 2017, the same judge who accepted defendant's plea and sentenced him, heard oral argument on defendant's PCR petition.  Defense counsel argued the transcript of the plea hearing "shows there was no factual basis" for stalking since defendant "denied knowing where [D.D.] lived."  Defense counsel further argued that "because there's not a factual basis for the charge . . . this [c]ourt is required to grant . . . [PCR]."

The PCR judge rejected these arguments, explaining his reasons in a nine-page written opinion. The judge found defendant received an "extremely favorable sentence of probation with the only custodial condition being time already served, which was 180 days . . . . when defendant could have served up to eighteen months in state prison." Based on the favorable sentence plea counsel obtained for defendant, the judge concluded defendant failed to satisfy either Strickland prong.[3] He also noted defendant failed to assert he would have gone to trial instead of pleading guilty.

The judge recounted what occurred at defendant's plea hearing:

> [P]rior to pleading guilty, [defendant] reviewed the discovery with [plea] counsel and acknowledged that fact on the record. The discovery included the police reports in which [D.D.'s] neighbor . . . reported that [defendant] had passed by D.D.'s house on three separate occasions and that his behaviors were 'alarming.' [Defendant,] having reviewed this discovery with his attorney, stated repeatedly under oath that he was pleading guilty to the offense of stalking and that he was doing so voluntarily. [Defendant] attested on the record that he had went over the plea form with his attorney, who helped him read it, and that his attorney answered all of his questions.

In addition to finding that defendant provided a factual basis for his guilty plea, that the plea was voluntary, and that defendant understood the

---

[3] Strickland v. Washington, 466 U.S. 668 (1984).

A-4708-17T3

consequences of his guilty plea, the judge also analyzed the four factors for withdrawing a guilty plea set forth in State v. Slater, 198 N.J. 145, 156 (2009), and found each factor did not favor allowing defendant to withdraw his guilty plea. The judge therefore denied defendant's petition without an evidentiary hearing.

This appeal followed, with defendant presenting the following arguments:

POINT ONE      THE FAILURE OF TRIAL COUNSEL, TO ASSURE THERE WAS A FACTUAL BASIS FOR THE CRIME DEFENDANT WAS PLEADING GUILTY TO, DESPITE THE FACT COUNSEL HIMSELF ATTEMPTED TO ELICIT THE FACTUAL BASIS, DEPRIVED DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

POINT TWO      THE PCR COURT ERRED WHEN IT FAILED [TO] CONDUCT AN EVIDENTIARY HEARING ON THE INEFFECTIVE ASSISTANCE OF COUNSEL ISSUE AND THE LACK OF A FACTUAL BASIS.

II

To show ineffective assistance of counsel, a defendant must meet the two-pronged test set forth in Strickland, 466 U.S. at 668, adopted by our Supreme Court in State v. Fritz, 105 N.J. 42 (1987). First, a "defendant must demonstrate

7

[] that counsel's performance was deficient." State v. Parker, 212 N.J. 269, 279 (2012) (citing Strickland, 466 U.S. at 687). Second, "a defendant must also establish that the ineffectiveness of his attorney prejudiced his defense." Ibid. When the claim of ineffective assistance relates to a guilty plea, a defendant must satisfy a modified Strickland standard:

> When a guilty plea is part of the equation, . . . 'a defendant must show that (i) counsel's assistance was not "within the range of competence demanded of attorneys in criminal cases"; and (ii) "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial."'
>
> [State v. Nunez-Valdez, 200 N.J. 129, 139 (2009) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994) (citations omitted) (second alteration in original)).]

Furthermore, to obtain relief under the second prong, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010) (citing Roe v. Flores-Ortega, 528 U.S. 470, 480, 486 (2000)).

Bald assertions of ineffective assistance are not enough. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). A petitioner "must allege facts sufficient to demonstrate counsel's alleged substandard

performance[,]" and the court must view the facts alleged in the light most favorable to the petitioner.  Ibid.

A person is guilty of stalking if he or she "purposefully or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for his safety or the safety of a third person or suffer some other emotional distress."  N.J.S.A. 2C:12-10(b).  The term "[c]ourse of conduct" includes "repeatedly maintaining a visual or physical proximity to a person; . . . by any action, method, device, or means . . ."  N.J.S.A. 2C:12-10(a)(1).  The term "repeatedly" means "on two or more occasions."  Ibid.

A judge must determine that there is "a factual basis for the [guilty] plea . . ." R. 3:9-2.  The factual basis for the plea can be established in either of two ways: "defendant may either explicitly admit guilt with respect to the elements" or may acknowledge underlying "facts constituting the essential elements of the crime."  State v. Campfield, 213 N.J. 218, 231 (2013) (citation omitted); see State v. Gregory, 220 N.J. 413, 419-20 (2015).

While defendant contended at the plea hearing he did not know where Officer D.D. lived, he acknowledged he walked by D.D.'s house almost every day.  The judge then asked defendant, "And [D.D.] lived in the house [of] the sidewalk you were walking in front of?"  Defendant replied, "Yeah, yeah."  The

9

judge found this admission, together with defendant's acknowledgment that he and his attorney together reviewed the discovery, which included police reports documenting defendant's stalking behavior, provided a sufficient factual basis for accepting the plea.

After defendant entered his plea, he wrote two letters to the court and two letters to plea counsel. In the letters, defendant registered complaints about his plea agreement providing for probation, rather than pretrial intervention; in addition, he expressed concerns about his sentencing date and his bail. In none of the letters did defendant assert a claim of innocence or a claim that he did not intend to enter a guilty plea to the stalking charge.

We find no basis to disturb the PCR judge's decision to deny defendant's petition. Defendant failed to establish either prong of Strickland – he received a favorable plea agreement relative to his overall exposure, and otherwise failed to establish he suffered any prejudice.

The PCR judge correctly found defendant failed to make a prima facie showing that his plea counsel prejudiced his defense. Considering defendant's history with D.D. – a police officer who recently arrested him – and the observations of defendant in front D.D.'s house witnessed by D.D. and his neighbor, defendant failed to present any rational argument for rejecting the

A-4708-17T3

State's plea offer. See State v. O'Donnell, 435 N.J. Super. 351, 371 (App. Div. 2014) (quoting Padilla, 559 U.S. at 372). Nor did defendant assert such a claim in his PCR petition or supporting certification.

We also reject defendant's contention that the PCR judge erred by failing to conduct an evidentiary hearing. A defendant is entitled to an evidentiary hearing only when he or she "'has presented a prima facie [case] in support of [PCR,]'" meaning that "the defendant must demonstrate a reasonable likelihood that his or her claim will ultimately succeed on the merits." State v. Marshall, 148 N.J. 89, 158 (first alteration in original) (quoting State v. Preciose, 129 N.J. 451, 462-63 (1992)). A hearing was not required here because defendant failed to establish a prima facie case for PCR, there were no material issues of disputed fact that could not be resolved by reference to the existing record, and an evidentiary hearing was not required to resolve defendant's claims. R. 3:22-10(b).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4708-17T3