# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3867-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DAVID F. HOHSFIELD,

    Defendant-Appellant.

_____

        Submitted October 22, 2025 – Decided January 21, 2026

        Before Judges Paganelli and Jacobs.

        On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 18-06-0716.

        Jennifer N. Sellitti, Public Defender, attorney for appellant (James D. O'Kelly, Designated Counsel, on the briefs).

        Raymond S. Santiago, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief; Michael A. Nair, Legal Assistant, appearing pursuant to Rule 1:21-3(b), on the brief).

PER CURIAM

Defendant David Hohsfield appeals from the denial of his petition for post-conviction relief (PCR). He asserts the PCR judge erred in concluding his claim of ineffective assistance of appellate counsel was procedurally barred pursuant to Rule 3:22-5 as having been previously adjudicated, and further erred in denying relief without an evidentiary hearing to adequately address his self-represented claims for relief. We affirm in part and remand for further proceedings.

I.

In September 2018, defendant pleaded guilty to one count of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1), and three counts of fourth-degree harassment, N.J.S.A. 2C:33-4(e), involving three minor victims. The plea agreement recommended a sentence of time served, with defendant subject to registration under Megan's Law, N.J.S.A. 2C:7-1 to -5; and parole supervision for life (PSL), N.J.S.A. 2C:43-6.4. At the plea hearing, defendant admitted being present in several retail stores and using explicit and profane language of a sexual nature in the vicinity of minors in a manner to impair or debauch their morals.

2

In his allocution, defendant engaged in the following colloquy, beginning with defense counsel:

> Q: [Defendant], I'm going to direct your attention to various dates between May 4th, 2018 and May 8th, 2018. Okay? Let's start with [c]ount 5, harassment. I'm going to direct your attention to May 7th, 2018. On that date were you in the Township of Howell in Monmouth County?
>
> A: Yes, I was.
>
> Q: And in fact at some point during that day you did go to a department store in Howell, is that correct?
>
> A: Yes, that's correct.
>
> Q: And while in that department store you were walking in the store in the vicinity of a person named G.G. who was under the age of 16?
>
> A: That's correct.
>
> Q: And while in the vicinity of that person you did make a series of communications using profane language?
>
> A: That's correct.
>
> Q: And there was no legitimate purpose to these communications?
>
> A: No.
>
> THE COURT: Prosecutor?
>
> CROSS EXAMINATION BY [PROSECUTOR]:

3

Q: And at the time you were under parole supervision and community supervision for life, is that correct?

A: That's correct.

Q: So you were serving that sentence?

A: Yes.

Q: Okay. During all the time that's alleged in this indictment you were also under either both parole supervision and community supervision for life [(CSL)] as previously imposed by a [c]ourt, correct?

A: That's correct.

    . . . .

CONTINUED DIRECT EXAMINATION BY [DEFENSE COUNSEL]:

Q: Now, [c]ount 8, I'm going to direct your attention again to May 7, 2018. On that date you were in a different department store in Howell Township?

A: That's correct.

Q: And while in that store you . . . were walking in the vicinity of a person named V.S. who was under the age of 16?

A: That's correct.

Q: And while in the vicinity of that person . . . you did engage in a series of communications in which you used profane language?

A: That's correct.

4

Q: And there was no legitimate purpose to those communications?

A: That's correct.

. . . .

Q: And then [c]ount 10. I direct your attention to May 8th, 2018. You were again in a department store in the Township of Howell, County of Monmouth?

A: I was.

Q: And you were walking around that store when you came in the vicinity of a person whose initials are R.R. as a person under the age of 16?

A: Correct.

Q: And again you did engage in communications . . . you used profane language, is that correct?

A: Yes.

Q: And that could be heard by that person?

A: Yes.

Q: And there was no legitimate purpose to this communication.

A: No.

Q: And again you were on parole and community supervision.

A: Yes.

Q: Now, finally I direct your attention to May 4th, 2018. This is for [c]ount 3 [third-degree endangering the welfare of a child]. You were again in a department store in Howell Township in Monmouth County?

A: Yes, I was.

Q: And you again engaged in similar behavior in which we described, which is using profane language in the vicinity of a person who's under the age of 16?

A: Yes.

Q: And you agree . . . . This communication was of a sexual nature[?]

A: Yes, it was.

Q: And you agree by engaging in this communication which could be heard by a person of less than 16 years old, that it did impair or debauch the morals of that child?

A: Yes.

The trial judge made findings of fact and conclusions of law:

All right. I am satisfied that [defendant] has entered a knowing and voluntary plea of guilty to [c]ount 3, endangering the welfare of a child, third degree, and then [c]ounts 5, 8, 10, fourth[-]degree harassments. He has answered the [c]ourt's questions and counsel's questions alertly with full understanding of those charges. He has signed the plea form, waived his constitutional rights in a knowing, voluntary and intelligent manner. He's indicated he is satisfied with the advice he's received from [defense counsel] and the

6

[c]ourt finds the plea is entered based upon the advice of competent counsel.

He understands the nature of the sentence. He understands the Megan's Law registration, [PSL] and the Avenel evaluation that he will have to undergo because . . . [h]e's on PSL and CSL and also on Megan's Law registration where he lives. Therefore[,] the [c]ourt will accept his guilty plea to all of those charges.

I find a proper and adequate factual basis exists for each one, and the pleas have been entered knowingly and voluntarily and intelligently. I'm also satisfied the pleas are not the result[] of any threats, promises or inducements other than the bargain placed on the record and the information set forth in the written plea form. Finally, I find defendant has voluntarily entered these pleas and is doing so because he is in fact guilty of all four charges. . . .

In December 2018, the trial judge sentenced defendant to 220 days time-served on all counts, levied a mandatory $50 Victims of Crime Compensation Board penalty, N.J.S.A. 2C:43-3.1, and $75 Safe Neighborhood Services Fund assessment, N.J.S.A. 2C:43-3.2, for all counts, as well as a single $800 Sexual Assault Nurse Examiner (SANE) fee, and $750 Sex Crime Victim Treatment Fund (SCVTF) penalty pursuant to N.J.S.A. 2C:14-10 and N.J.S.A. 2C:43-3.6.

Defendant appealed his sentence. The case was listed on the sentencing oral argument (SOA) calendar. See Rule 2:9-11.

At argument in June 2019, appellate counsel asserted the factual basis for the guilty plea was inadequate, referencing both the harassment and endangering counts, and contended the trial judge erred in imposing fines.

> [COUNSEL]: Two argument[s] to be made in this case, one regarding the factual basis or the lack thereof, and, secondly, regarding the fines that were imposed based upon the nature of the offenses that were pled guilty to, again, basically based upon the lack of a factual basis.
>
> [Defendant] pled guilty to four different counts, three counts of fourth[-]degree harassment, one count of third[-]degree endangering the welfare of the child. If you look at the factual basis that was taken by the [c]ourt, if you look at the language that was used, it's lacking. It's lacking under the harassment statute. There's nothing that indicates that he made the comments that he made with the purpose to harass, and there's nothing that indicates how it was offensive.
>
> [COURT]: Well, they asked if there was any legitimate purpose to the profane language, isn't that consistent with the State's theory?
>
> [COUNSEL]: It might be consistent with the State's theory, but it's not an adequate factual basis to explain what he did to harass. It specifically wasn't pointed at the child that was in the department store.
>
> He was in a department store. He was using profane language, and he was doing it in the vicinity of a person who was under 16 years old, and there was no legitimate purpose for that communication, but that's it. That was the only language that's used to establish a factual basis and under the statute for harassment there has to be an intent, a purpose to harass.

8

Certainly just making a profane -- using a profanity while there's a person under the age of 16 with no legitimate purpose for that communication, I'm sure that happens on every school yard and every school in this entire state. I can't imagine that that by itself, in and of itself could establish . . . a factual basis.

And so to the second argument, there's two fines that were imposed, an $800 fine, a $750 fine, both regarding contact with the victim regarding the sexual nature of the allegation, and I submit that those are not applicable in this case, again, lacking a factual basis sufficient to support both the harassment charge and the endangering the welfare charge.

[COURT]: So you agree though that if hypothetically we disagreed with your argument about the factual basis and found it to be adequate, that the fines and penalties then are appropriate, right?

[COUNSEL]: I would agree with that.

[COURT]: Okay. Very good. Thank you very much.

The panel affirmed, concluding the sentence, including fines and penalties, was not manifestly excessive or unduly punitive. The panel did not explicitly address adequacy of the factual basis, instead emphasizing adjudication only of the sentence imposed:

Having considered the record and argument of counsel, and it appearing that the issues on appeal relate solely to the sentence imposed, we are satisfied that the sentence is not manifestly excessive or unduly punitive and does not constitute an abuse of discretion. State v.

9

> Cassady, 198 N.J. 165 (2009); State v. Roth, 95 N.J. 334 (1984).
>
> [State v. Hohsfield, No. A-1921-18 (App. Div. June 3, 2019) (order at ¶ 2).]

Defendant filed a self-represented petition for PCR in October 2019, listing eleven grounds for relief. In November 2019, pursuant to Rule 3:22-3, the court dismissed the petition without prejudice. In September 2021, defendant re-filed his petition. In April 2023, defendant, now represented by PCR counsel, filed a supplemental brief renewing his original eleven arguments and contending that trial counsel was ineffective "for failing to elicit an adequate factual basis for the charges to which defendant pled guilty[,] and appellate counsel was ineffective for addressing the issue on the SOA appeal" rather than direct appeal. Specifically, defendant posited he had not provided "a factual basis admitting what 'profane' language he used in the presence of the minor victims with the purpose to harass them."

On July 3, 2024, the PCR judge issued an order denying relief without holding an evidentiary hearing. In his written decision, the judge recited the first seven of eleven claims raised by defendant, omitting any reference to the remaining four.

A complete list of the claims follows:

(A) [Defendant] was deprived of effective assistance by counsel failing to advance a [m]otion to [d]ismiss [i]ndictment as [defendant']s actions did not rise to the level of criminality with respect to the elements . . . [of] the offenses he was charged with. Citing NJ Supreme Court [c]ases of State v. William Bukert, 231 N.J. 257 and State v. Tate, 220 N.J. 393[;]

(B) [Defendant] was deprived of effective assistance by counsel's failure to challenge police interrogation by [a] [s]uppression [m]otion where police stated [defendant] had admitted to committing offenses when the interrogation DVD clearly shows he did not[;]

(C) [Defendant] was deprived of effective assistance by counsel's failure to challenge [h]arassment [c]omplaints and the statements that victims gave to police that actually contradicted police affidavits in support of [p]robable [c]ause for the issuance of warrants[;]

(D) [Defendant] was deprived of effective assistance by counsel failing to request a Miranda[1] hearing when police continued to question and interrogate him after charges were filed and after requesting for [an] attorney at his place of residence, the day prior to being arrested[;]

(E) [Defendant] was deprived effective assistance by counsel's failure to challenge the validity of complaint/warrant(s) as the warrants were void of any information other th[a]n [N.J.S.A.] statutes of the offenses[;]

(F) [Defendant] was deprived of effective assistance by counsel informing him that there w[ere] no viable

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

defenses and that accepting the [S]tate['s] plea offer would be the best thing to do[;]

(G) [Defendant] was deprived effective assistance of counsel by his failure to advance a [Fir]st Amend[ment] [d]efense with respect to the [h]arassment/[e]ndangering charges for uttering profanities in a public place[;]

(H) [Defendant] was deprived of effective assistance of counsel by counsel's failure to correct the SCVTF and SANE fines at sentencing that were incorrectly imposed as per the plea agreement[;]

(I) [Defendant] was deprived effective assistance by counsel's failure to provide complete [d]iscovery, i.e., [t]he [g]rand [j]ury [t]ranscripts that deprived him the opportunity to make an informed decision regarding his potential defenses and legal situation[;]

(J) [Defendant] was deprived effective assistance by counsel providing him with bad advice regarding accepting [the] state['s] plea without the fear of any [p]arole [v]iolation happening in the future. Petitioner is currently incarcerated on a [p]arole [v]iolation for accepting plea[;]

(K) [Defendant] was deprived of effective assistance by counsel failing to pursue a [d]iminished [c]apacity [d]efense rather th[a]n waiving request for [m]edical [r]ecords [d]iscovery during plea which would have clearly shown petitioner suffers from early onset Alz[heimers].

The PCR judge determined defendant's ineffective assistance claims were procedurally barred under Rule 3:22-5. Alternatively, the judge ruled that even

12

considered on the merits, defendant's admissions at the plea hearing established an adequate factual basis for both the harassment and endangerment charges.

On appeal, defendant raises two points:

POINT I

THE PCR COURT'S CONCLUSION THAT DEFENDANT'S CLAIM OF INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL WAS PROCEDURALLY BARRED PURSUANT TO R[ULE] 3:22-5 AS A PREVIOUSLY ADJUDICATED MATTER WAS ERRONEOUS AND SHOULD BE REVERSED.

POINT II

THE PCR COURT FAILED TO CONSIDER AND RESOLVE DEFENDANT'S ELEVEN PRO SE CLAIMS FOR [PCR]. (NOT RAISED BELOW).

Regarding the first point, PCR counsel asserts appellate counsel inadequately addressed, or entirely omitted, the argument concerning the endangerment count, particularly the requirement of an explicit admission of a "knowing" mental state. As such, PCR counsel contends appellate counsel was ineffective, warranting reversal. Regarding the second point, PCR counsel argues the judge's failure to expressly analyze all of defendant's self-represented claims, especially the four claims not listed in the judge's opinion, warrants remand for further proceedings or express findings.

II.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 416, 419 (2004). The de novo standard of review also applies to mixed questions of fact and law. Id. at 420. We may "conduct a de novo review" of the court's "factual findings and legal conclusions" where the PCR court has not conducted an evidentiary hearing. Id. at 421; see also State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020). The PCR court's decision to proceed without an evidentiary hearing is reviewed for an abuse of discretion. State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013)).

When petitioning for PCR, a defendant must establish entitlement "to PCR by a preponderance of the evidence[,]" rooted in a cognizable claim. Id. at 624 (quoting State v. O'Donnell, 435 N.J. Super. 351, 370 (App. Div. 2014)). "A PCR petition is cognizable if it is based upon a '[s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey.'" State v. Gideon, 244 N.J. 538, 549 (2021) (alteration in original) (quoting R. 3:22-2(a)).

"A petitioner is generally barred from presenting a claim on PCR that could have been raised at trial or on direct appeal, R[ule] 3:22-4(a), or that has

been previously litigated, R[ule] 3:22-5." State v. Nash, 212 N.J. 518, 546 (2013); see also R. 3:22-4. "[PCR] is not a substitute for direct appeal; nor is it an opportunity to relitigate a case on the merits." State v. Szemple, 247 N.J. 82, 97 (2021) (citing State v. Jones, 219 N.J. 298, 310 (2014)).

Rule 3:22-5 provides:

> A prior adjudication upon the merits of any ground for relief is conclusive[,] whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings.

We first address whether defendant previously presented and had "adjudicated upon the merits" his claim that there was an insufficient factual basis to meet the elements of harassment and endangering the welfare of a child. Concerning the SOA order, defendant argues "the [panel] did not rely on that or give a cogent decision based on that argument."

We acknowledge that one may fairly infer the SOA panel forecast a decision on the argument raised when asking, "[s]o you agree though that if hypothetically we disagreed with your argument about the factual basis and found it to be adequate, that the fines and penalties then are appropriate, right?" Nonetheless, the ruling issued narrowly addressed the sole purpose of the proceeding, namely, whether "the sentence is not manifestly excessive or unduly

A-3867-23

punitive and does not constitute an abuse of discretion."  Stated otherwise, although counsel adequately raised the argument, the SOA panel did not decide whether the factual basis was legally adequate.  We conclude therefore that the SOA proceeding cannot fairly be interpreted to constitute a prior adjudication of the factual-basis issue on the merits.  R. 3:22-5.

In the absence of prior adjudication, Rule 3:22-5 does not apply.  We therefore assess de novo the legal question whether the elicited factual basis satisfied the elements of the two offenses concerned as addressed by the PCR judge.

New Jersey courts are "very sensitive to the requirement that there be an adequate factual basis for a plea of criminal guilt" as in pleading guilty, a defendant is giving up the "most cherished right" to a trial by jury.  State v. Smullen, 118 N.J. 408, 414 (1990).  This sensibility is embodied in our court rules.

> [T]he court must independently satisfy itself "that there is a factual basis for the plea and that the plea is made voluntarily, not as a result of any threats or any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea."
>
> [Smullen, 118 N.J. at 415 (quoting R. 3:9-2).]

In Smullen, the Supreme Court overturned the Appellate Division's

16

rejection of a guilty plea because it was elicited through leading questions rather than fully articulated by defendant. Id. at 410. The Court recognized:

> The Appellate Division was understandably troubled in this case by the fact that defendant furnished the factual basis for the plea as a result of leading questions. The trial court had no choice, however, but to satisfy itself that defendant was admitting the distasteful reality that makes the charged conduct criminal. It is not the kind of thing that people like to admit.
>
> [Id. at 415.]

The Court concluded it was "satisfied that taken in the context of the entire plea colloquy—the rather extensive discussion between the court and defendant concerning the written plea agreement that defendant signed and defendant's consultations with his attorney—there was an adequate factual basis for the plea." Ibid. A review of the record reflects that much the same occurred here.

Third-degree endangering the welfare of a child is defined in our criminal code as:

> Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child is guilty of a crime of the second degree. Any other person who engages in conduct or who causes harm as described in this paragraph to a child is guilty of a crime of the third degree.
>
> [N.J.S.A. 2C:24-4(a)(1).]

17

A-3867-23

The mens rea element of the statute has been construed by this court to be "knowingly," as defined in N.J.S.A. 2C:2-2(b)(2). State v. Bryant, 419 N.J. Super. 15, 23 (App. Div. 2011). For conviction, it is also required that there be "proof that the sexual conduct had the capacity to impair or debauch the morals of the child." Ibid.

Defendant observes he did not explicitly acknowledge that "he 'knowingly' engaged in sexual conduct with the minor victims whom he did not know and did not speak to directly, nor did he indicate the specific language used that would have constituted sexual contact in violation of the statute."

In response, the State argues, and we agree, "[d]efendant admitted that he knowingly engaged in sexual conduct, when he acknowledged making a 'communication' that he himself characterized to be of such 'a sexual nature' that it 'did,' in fact, 'impair or debauch the morals of' the victim." We are also persuaded by the State's position that "[b]y characterizing his conduct as 'sexual,' defendant of course admitted he knowingly engaged in sexual conduct." As established, the fact that these admissions were made in response to leading questions makes them no less valid and sufficient in this particular context. Smullen, 118 N.J. at 415.

More generally, we are mindful that our jurisprudence has recognized a

18

"defendant's admission or acknowledgment may be understood in light of all surrounding circumstances." State v. Sainz, 107 N.J. 283, 293 (1987). "What is important -- when the court goes beyond defendant's admission or factual version -- is that the court not sentence defendant for a crime that is not fairly embraced by the guilty plea." Ibid. (citing State v. Sainz, 210 N.J. Super. 17, 31 (App. Div. 1986) (Baime, J., concurring)). Thus, we are satisfied that a generic recitation of the elements of the crime suffices where, as here, defendant acknowledged under oath "communicat[ing]" in language "of a sexual nature" in the vicinity of a child less than sixteen years old that "did impair or debauch the morals of that child." N.J.S.A. 2C:24-4(a)(1).

In similar fashion, defendant's plea colloquy satisfied the two-part test for fourth-degree harassment. A person, who is "on parole or probation as the result of a conviction of any indictable offense under the laws of this State" is guilty of fourth-degree harassment, where, "with purpose to harass another, he . . . [m]akes, or causes to be made, one or more communications . . . in offensively coarse language, or any other manner likely to cause annoyance or alarm." N.J.S.A. 2C:33-4(a), (e). The plea colloquy reflects defendant made "a series of communications using profane language" where "there was no legitimate

19

purpose to these communications[,]" knowing he was in the immediate vicinity of each of the three minors designated.

Given our de novo review, under those circumstances, it was reasonable for the trial court to infer those communications were directed toward the minors. Our de novo review supports the reasoning of the PCR judge, who wrote:

> A trial court's conformance with Rule 3:9-2 need not follow a "prescribed or artificial ritual." State ex rel. T.M., 166 N.J. 319, 327 (2001). A judge must determine that there is "a factual basis for [a] guilty plea." R. 3:9-2. "The factual basis for a guilty plea can be established by a defendant's explicit admission of guilt or by a defendant's acknowledgement of the underlying facts constituting [the] essential elements of the crime." State v. Gregory, 220 N.J. 413, 419 (2015). The defendant's admission "should be examined in light of all surrounding circumstances and in the context of an entire plea colloquy." T.M., 166 N.J. at 327 . . .
>
> [Alteration in the original.]

We turn next to defendant's claim for ineffective assistance of appellate counsel. We apply the familiar two-part constitutional standard established in Strickland v. Washington, 466 U.S. 668, 687 (1984) and adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), to determine whether a defendant has been deprived of the effective assistance of counsel. To satisfy the standard's first prong, a petitioner "must show . . . counsel's

20

performance was deficient" by demonstrating counsel's handling of the matter "fell below an objective standard of reasonableness" and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687-88.

Under the "second, and far more difficult, prong of the Strickland standard[,]" Gideon, 244 N.J. at 550 (quoting State v. Preciose, 129 N.J. 451, 463 (1992)) (internal quotation marks omitted), "a defendant 'must show that the deficient performance prejudiced the defense.'"  State v. O'Neil, 219 N.J. 598, 611 (2014) (quoting Strickland, 466 U.S. at 687).  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Gideon, 244 N.J. at 550-51 (alteration in original) (quoting Strickland, 466 U.S. at 694).  Proof of prejudice under Strickland's second prong "is an exacting standard."  Id. at 551 (quoting State v. Allegro, 193 N.J. 352, 367 (2008)).  A defendant seeking PCR "must 'affirmatively prove prejudice'" to satisfy the second prong of the Strickland standard.  Ibid. (quoting Strickland, 466 U.S. at 693).

A-3867-23

With respect to showing prejudice under the Strickland analysis after entering a guilty plea, "a defendant must prove 'that there is a reasonable probability that, but for counsel's errors, [he or she] would not have pled guilty and would have insisted on going to trial.'" State v. Gaitan, 209 N.J. 339, 351 (2012) (alteration in the original) (quoting State v. Nunez-Valdez, 200 N.J. 129, 139 (2009)).

To prevail on a claim of ineffective assistance of counsel, a defendant must establish both prongs of the Strickland standard. 466 U.S. at 687; see also Nash, 212 N.J. at 542. A failure to satisfy either prong requires the denial of a PCR petition founded on an ineffective assistance of counsel claim. Strickland, 466 U.S. at 700. "With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence." Gaitan, 209 N.J. at 350.

Defendant contends appellate counsel was ineffective for not specifically identifying flaws in the factual basis on the child endangerment charge and asserts that if these issues had been properly raised, there was a reasonable probability that the conviction would have been reversed. Defendant notes appellate counsel's substantive arguments were not addressed by the SOA panel,

22

which considered only whether the sentence was excessive and did not address whether the factual basis was inadequate.

During oral argument before the PCR judge, defendant argued he did not admit to the required elements of the offenses—such as using profane language or acting with intent to harass—and did not acknowledge he knowingly engaged in sexual conduct with minors. Further, defendant argued the matter should have been thoroughly briefed on direct appeal but was not, and resulted in his defense being prejudiced. We disagree.

Our review of appellate counsel's argument before the SOA panel reflects a thorough presentation of arguments regarding the purported insufficiency of the factual basis for harassment. Counsel before the PCR judge likewise presented robust arguments regarding the purported insufficient factual basis for endangering the welfare of a child. Arguments at both levels were compelling but ultimately unpersuasive. On de novo review, therefore, we concur with the PCR judge's conclusion that defendant failed to show by a preponderance of evidence that counsel's performance with respect to the factual-basis issue was deficient in a manner that fell below an objective standard of reasonableness or erred in a way that deprived defendant of counsel as guaranteed by the Sixth Amendment.

23

Finally, our review of the record on appeal reflects the PCR judge did not engage in a substantive analysis of defendant's remaining claims, designated (A) through (K), with the single exception of (H) concerning the imposition of fines. Regarding that point, we invoke original jurisdiction. State v. Reevey, 417 N.J. Super. 134, 147 (App. Div. 2010) (holding appellate courts may invoke original jurisdiction in the review of a matter where "there was no evidentiary hearing and no credibility determinations were made").

We reject defendant's contention that plea counsel was ineffective by failing to correct the SCVTF and SANE fines at sentencing in purported violation of the plea agreement. Both N.J.S.A. 2C:14-10(a)(3) and N.J.S.A. 2C:43-3.6 require fines in the amounts imposed for individuals convicted of sex-related offenses inclusive of endangering the welfare of a child. During the SOA proceeding, appellate counsel conceded the fines and penalties were appropriate in imposition and amount, assuming the factual basis for the guilty plea was determined sufficient. Having concluded the factual basis was sufficient, the fines were properly imposed, as already adjudicated. R. 3:22-5.

In sum, we affirm the PCR judge's denial of defendant's petition regarding ineffective assistance of counsel regarding the factual bases for harassment, endangering the welfare of a child, and fines assessed.

However, the PCR judge did not adequately address the ten remaining self-represented claims. Even if we were to invoke original jurisdiction as to the remaining claims, as the State suggests, we do not have those portions of the record required to conduct an adequate analysis of the issues. We therefore remand for the PCR judge to make express findings, taking no position whether an evidentiary hearing is required.

Affirmed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division